IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiffs,<br><br> vs.<br><br>NOE LOERA,<br><br>    Defendant. | 4:13CR3025<br><br>MEMORANDUM AND ORDER |

  Defendant Loera has moved for an order requiring the government to disclose exculpatory impeachment information that may be in possession of law enforcement agencies associated with his prosecution, (Filing No. 43), including Nebraska Criminal Justice Information System ("NCJIS") information for the government's Confidential Informant (CI) and for co-defendant Samaniego-Garcia, (Filing No. 44). In response to the motions, the parties have attempted to resolve, and have resolved, several aspects of the pending motions. But a few matters remain in dispute.

STANDARD OF REVIEW

  By order of this court, the parties were required to exchange discovery under Rule 16 of the Federal Rules of Criminal Procedure by March 19, 2013 (with an obligation to continually supplement), and evidence favorable to the accused, as described in Brady v. Maryland, 373 U.S. 83 (1963) and its progeny, as soon as practicable. (Filing No. 18). Rule 16 requires the prosecution to disclose: (1) any recorded statements by the defendant; (2) defendant's oral statements made in response interrogation by a known government agent (but if not previously summarized in a written record, only if the prosecution intends to use the statement in evidence); (3) defendant's prior record; (4) documents and objects the government intends to use as evidence, items obtained from the defendant, and items "material to preparing the defense;" (5) reports of scientific tests and examinations if the prosecution intends to use the report in evidence or the report is

material to preparing the defense, and (6) a summary of anticipated expert testimony. Fed.R.Crim.P. 16. The prosecution's failure to disclose evidence favorable to an accused violates due process if the evidence is material to the findings of either the defendant's guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. Brady, 373 U.S. at 87. When a defendant files a motion to compel alleging Brady materials have been withheld, the defendant must make a preliminary showing demonstrating that the government possesses information that would be helpful to his defense. U.S. v. Roach, 28 F.3d 729, 734 (8th Cir. 1994); U.S. v. Krauth, 769 F.2d 473, 476 (8th Cir. 1985).

After a telephone conference with the court, the parties clarified their respective positions regarding the information disclosed or withheld, the defendant's current need (or not) for the information requested, and their arguments on the issues still in dispute. This memorandum and order addresses, by category, the document requests and the court's ruling on those requests.

    1.    <u>Law enforcement reports and statements for the CI's prior arrests</u>.

Loera's motion requested all of the reports and statements prepared by law enforcement in connection with the CI's arrests on September 7, 2003 and March 12, 2007 by the Crete, Nebraska police; on July 5, 2008 by the Nebraska State Patrol; and on July 26, 2009 by the Grand Island, Nebraska police. Loera's counsel now states he has obtained "police reports from the CI's multiple contacts with law enforcement" and no longer needs this information. Soucie email—June 6, 2013; Soucie email—June 7, 2013. The defendant's motion for disclosure of police reports for the CI's arrests will be denied as moot.

As to the statements within the police files for the CI's arrests, and all reports and statements related to co-defendant Samaniego-Garcia's criminal history, Loera has not

explained how that information is potentially exculpatory or material. Roach, 28 F.3d at 734. See, e.g., U.S. v. Tate, 633 F.3d 624, 630 (8th Cir. 2011)(holding no Brady violation occurred where the defendant was charged with being a felon in possession and the government failed to disclose evidence of the testifying officer's alleged off-duty altercation at an unrelated time and place). And there is no showing that such materials are under the possession or control of the United States or its prosecutor. Loera's motion to compel the government to disclose statements within the files of local law enforcement regarding the CI's prior arrests, and law enforcement files for prior arrests of co-defendant Samaniego-Garcia, will be denied.

2.  Inducements afforded to the CI in exchange for his testimony.

The defendant has requested production of any communications, agreements, deals, understandings, or other information that allowed the CI's release from the probation imposed as a sentence for his second offense DUI in Hall County; his continued release despite a third DUI offense in Dawson County; the dismissal of the third DUI offense; and the return of his driver's license in exchange for performing work as a confidential informant. Loera also claims the CI may have received monetary benefits in exchange for his cooperation. In support of this claim, Loera cites a letter located in the Hall County court files which confirms the CI was divorced in 2007, was not paying his bills, and had child support problems, but nonetheless did have enough money to pay court fines of approximately $500. Soucie email—June 6, 2013, p. 4 & attached letter. Loera therefore requests the identity of the court and the docket number for the CI's divorce proceedings, the amount of child support ordered, any child support arrearages at the time of entering into cooperation agreements in August of 2010, child support payments made by the government on the CI's behalf, and a copy of state and federal 1099 tax records for tax years 2010 and 2011 showing amounts paid by the government to the CI and any taxes withheld from those payments.

3

The government states it has provided all information regarding the benefits received by the CI in exchange for his cooperation, explaining that if it discovers anything more which constitutes <u>Brady</u> material, it will promptly provide the information to the defendant. As to the requested divorce and child custody/support information, the government further states that it does not possess this information and it is not obligated to look for it on defendant's behalf, particularly where the information is likely a matter of public record. The government further notes that defense counsel's request does not overcome or even address the statutory or regulatory impediments to production of a non-party's tax information.

"[T]he government has already provided reports and agreements showing what the CI has received for his work, both for controlled purchases completed before in unrelated controlled purchases before this case arose, and what the CI received in exchange for his participation in the controlled buys for this case." (Filing No. 61, at CM/ECF p. 9). "All payments to the CI for his work as a CI for the Task Force have been provided in discovery already, and a review of those records shows that no such payments were made." (Filing No. 61, at CM/ECF p. 10). Based on the government's representations, and absent any preliminary showing to the contrary by Loera, the motion to compel additional documentary information regarding any inducements provided to the CI in exchange for his assistance will be denied.

  3.  <u>CI's informant work summary</u>.

The defendant moves for a summary of all informant work performed by the CI, including the names, locations, and dates of the CI's contacts. Defense counsel states:

> As a "FACTUAL" matter, it is necessary to know if the CI actually did perform the 8 buys in the time between the finalization of the deal on 8/17/2010 and the claim by Inv. Kemp that the CI had complied with his deal (8 from 4) on 9/13/10. If not, then the defense should know that. If yes, then I would suggest a showing (in camera, if requested) that a) there

4

were "X" number of buys made with "Y" number of defendants and that b) they were prosecuted, or prosecutions are pending (in which case there can be no prejudice). Or, c) there are prosecutions pending and it would be prejudicial to the government if disclosure were made at this time (arguably affecting case to be prosecuted).

Soucie email—June 6, 2013, p. 3.

The government has produced all records of work performed by the CI with respect to defendant Loera. See U.S. v. Taylor, 542 F.2d 1023, 1025 (8th Cir. 1976). Loera's counsel has not explained how the CI's contact with persons other than Loera is potentially exculpatory, relevant to this case, or material to his defense. Moreover, release of such information could undermine other criminal investigations. The defendant's motion for production or <u>in camera</u> review of such information will be denied.

    4.    <u>Video and electronic surveillance and tracking data</u>.

The defendant requests all documents reflecting video surveillance, electronic data storage, or information of whatever kind obtained from GPS tracking devices affixed to motor vehicles belonging to Noe Loera and Jesus Samaniego-Garcia.

Based on the government's representation to the court during the conference call, and the parties' current submissions, this matter appears to be resolved. Defense counsel states:

> My understanding is that there was limited attempts at GPS tracking on the Samaniego vehicle with not much success, as well as video surveillance at the Samaniego garage in Hastings. I believe this shop has since been torn down, but the reports I have been provided do not indicate that Loera appears on any of these videos. If Mr. Molson represents that the reports are correct, then I would be satisfied.

Soucie email—June 6, 2013, p. 4.

5

The government's response indicates there is no exculpatory evidence of this type. Molsen response—June 7, 2013, p. 6. The defendant's motion to compel surveillance and tracking information will be denied.

5.  Cellphone records.

The defendant requests copies of any cellphone records, including subscriber number, date, time, sender, recipient, and text message content during the period of March 1, 2010, thru March 1, 2011 for Noe Loera, Jesus Samaniego-Garcia, and the CI. The government subpoenaed the records for September through October of 2010: "Some of the records have been provided, and more will soon be provided" upon receipt by the government's counsel. Molsen response—June 7, 2013, p. 4. Based on this representation, defense counsel states "[t]hese are being provided by the government and I would withdraw the request." Soucie email—June 6, 2013, p. 4.

Loera's motion to compel cellphone records will be denied as moot.

6.  NCJIS records for the CI and for co-defendant Jesus Samaniego-Garcia.

The defendant has moved for NCJIS records for the CI and for co-defendant Jesus Samaniego-Garcia, including for each the current "NAME" summary with booking photographs; state and federal identification numbers, dates of birth, alias, and jail admissions and discharges; "CRIMINAL HISTORY" showing all arrests, convictions, and court dispositions; DMV driving record, operator's license record, and record showing vehicles registered to each individual from 2010 to the present; probation records; and Department of Labor records showing employment history. The defendant explains:

> In preparation for trial, I have had difficulty with some witnesses who would have had contact with the CI remembering him because these events took place almost 3 years ago. A photograph available

6

>through NCJIS would be a very helpful resource in witness preparation. The employment history (available through the Dept of Labor database) would be helpful in determining the CI's employment history, wages, and whether he is telling the truth regarding a tale of woe in paying his bills, or, is his money being spent on drink and going up his nose. The DMV records would be extremely helpful, since the CI has been so motivated by getting his license reinstated. I may be able to get that from DMV, I'm not sure at this point.
>
>. . . I am not attempting to get the original PSI, but will be issuing a subpoena to Ms. Luz for the records regarding compliance with the terms of probation (employment, meetings with his PO, etc.) AFTER the arrest in Dawson county for the felony DWI 3rd. Those records can be produced at time of trial and I would withdraw the request as directed to the AUSA.
>
>There is one other matter, in the pre-trial "discovery" category and that relates to the CI's citizenship status. I know that he was born in Mexico where he attended Catholic school, then moved to Lexington when he was about 10 years old. He attended 4th thru 10th grade in Lexington before dropping out and returning to Mexico where he lived with his grandparents until the age of 17. He then returned to the US in 1996 or 1997. His legal, marital, and criminal problems have been well documented.
>
>However, the manner in which he re-entered the US is not clear, nor is it clear that he is either a legal resident or US citizen. I have looked at the Dept of Homeland Security website and don't believe I qualify to confirm or refute the CI's citizenship status.

[Soucie email—June 6, 2013, p. 5](#).

Samaniego-Garcia will not be called as a government witness at trial. The government has not produced NCIC or NCJIS records for this co-defendant. Upon reviewing defense counsel's argument, Loera is not actually asking for NCJIS information for co-defendant Samaniego-Garcia.

The government has produced a current NCIC record for the CI, ([Molsen email—June 10, 2013](#)), but not an NCJIS record. According to defense counsel, of the

information NCJIS provides that cannot be obtained via NCIC, Loera has obtained the CI's DMV records and is obtaining the probation records through another source. Soucie email—June 7, 2013. But Loera requests the CI's photograph, employment history and, apparently, his citizenship status. The government does not have possession or control of Department of Labor records, and even if it did, Loera has made no showing that the CI's employment records may be material to his defense. The government may be able to locate citizenship records for the CI, but Loera has made no showing that this documentation would be relevant and admissible, undermine the CI's credibility, is material to Loera's defense, or is exculpatory. U.S. v. Benitez-Meraz, 161 F.3d 1163, 1167 (8th cir. 1998)(holding the prosecution did not commit misconduct by failing to disclose a witness' illegal alien status where there was no showing the government knew the witness was an illegal alien and the witness' non-prosecution agreement was unrelated to his illegal alien status); U.S. v. Bracy, 67 F.3d 1421, 1428 -1429 (9th Cir. 1995)(holding Brady was not violated where the government provided the defense with a printout from an NCIC computer search and as such, did not conceal the witness' criminal history. Nor has Loera shown that some or perhaps all of the employment and citizenship information could not be obtained through other sources. U.S. v. Gonzales, 90 F.3d 1363, 1368 (8th Cir. 1996)("[T]he government need not disclose evidence available to the defense from other sources or evidence already possessed by the defendants.").

     Defense counsel argues that it unfair that NCJIS records can be accessed by public defenders but not CJA-appointed counsel. This access distinction may seem anomalous to defense counsel, but the United States government did not create that issue and is not empowered to correct it. And on the record presented, this court cannot decide the validity or propriety of Nebraska's statute limiting access to NCJIS records: The State of Nebraska is not a party to this action and Loera has shown no real need for the information.

Accordingly,

IT IS ORDERED that defendant Loera's motion to disclose Brady and Rule 16 information, (Filing No. 43), and his motion to disclose NCJIS information for the government's Confidential Informant and for co-defendant Samaniego-Garcia, (Filing No. 44), are denied.

June 13, 2013.

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.